# VEST et al. v. BITNER.
## BITNER v. Vest et al.—241 S. W. (2d) 438.

Eastern Section.   August 28, 1950.

Petition for Certiorari denied by Supreme Court, January 13, 1951.

576

Leon Easterly, of Greeneville, for plaintiffs in error.

James N. Hardin, Greeneville, for defendant in error.

HOWARD, J.   These cross-actions grew out of an automobile accident which occurred on the Andrew Johnson Highway near the town of Chucky, eight miles east of Greeneville, Tennessee.  Involved in the accident was an automobile owned and driven by Tom Bitner, and a small truck owned by Bernice Vest and driven by her husband, Bee Normal Vest.  Both vehicles were traveling in an eastwardly direction at from 30 to 35 miles per hour, the truck following the automobile.  The collision occurred while Bitner was making a left (north) turn into the driveway of his home, which was only a few feet from the highway.  The truck struck the Bitner car near the left rear wheel, causing the alleged damages and injuries.  Bernice Vest sued Bitner for damages to her truck, and Bee Normal Vest sued Bitner for damages for personal injuries.  In a cross-action Bitner sued Vest for damages to his car.  In both cases the jury returned verdicts in favor of Bitner, which were approved by the trial judge.  Motions for new trials were duly made and overruled, and the Vests were granted and have perfected this appeal.

The pavement of the highway where the collision occurred was 18 feet wide and had a black line in the center which separated the lanes of traffic.  The Bitner driveway was located on a curve of the highway which, approaching from either direction, had yellow lines painted on the right side of the center line.  The ends of these yellow lines did not meet, but terminated 5 or 10 feet from the driveway.  The yellow lines were painted by the State Highway Department and were a warning to

motorists not to attempt to pass other cars at these particular points. The accident occurred about 9:30 p. m.

It is insisted on behalf of the plaintiffs-in-error that the verdicts are contrary to the evidence and are not supported by any material evidence. Where there are disputed issues of fact, this court will not assume the duty of determining liability or nonliability in actions of tort, but will leave such duty with the jury as triers of facts. Jackson v. B. Lowenstein & Bros., 175 Tenn. 535, 136 S. W. (2d) 495. Nor will this court disturb a jury verdict if there is any material evidence to support it. In determining whether or not there is such evidence "it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict." D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901. Applying the foregoing rule, we think that this assignment is without merit.

According to the undisputed proof, the Vest truck followed the Bitner car for a considerable distance before the collision occurred. Bitner stated that when he first saw the lights of the truck it was approximately a quarter of a mile away, and that more than 100 steps before reaching his driveway he put his left hand out of the car window indicating that he intended to turn; that he kept his hand in this position until he was ready to turn, at which time he shifted into second gear; that the Vest truck struck his car and knocked it more than 90 feet east of the driveway, and that after his car stopped the left window was down; that immediately after the accident Vest came to him and said: "Mr. Bitner, did you

give any signal," and I said, "Sure, I did," and he said, "If you did I didn't see it," and I said "I did."

Bitner introduced several witnesses who arrived on the scene immediately after the accident. Two of these witnesses were peace officers who made an investigation of the accident. All of these witnesses testified that they saw skid marks on the left side of the highway near Bitner's driveway, and that these skid marks extended from the yellow line to where the collision occurred. These witnesses also testified that they heard the foregoing conversation between Bitner and Vest, and that the left window of the Bitner car was down. Bitner further testified that the driver of the truck never sounded his horn, and that he had never seen a car pass another on the curve in front of his house.

Besides testifying themselves, the Vests called three witnesses who were riding in the truck with them at the time of the accident. The Vests and their witnesses testified in substance that they saw the Bitner car traveling ahead of them, and that Vest, the driver of the truck, sounded the horn before attempting to pass the Bitner car; that Bitner did not put out his hand or signal his intention to turn to the left on the highway. Two of these witnesses stated that they went to the Bitner car immediately after the accident; that they found Bitner sitting in his car, and that the glass in the left door was up. Vest stated that there was no yellow line on the highway where he started to pass the Bitner car, and that the line was painted on the road within a few days following the accident.

Under the proof, there being disputed issues of fact, a jury question was presented, and the jury having adopted Bitner's theory as to how the accident occurred, we find there was ample evidence to support the verdicts.

In the following cases this court has heretofore held that issues of negligence and contributory negligence are questions for the jury. Tubb v. Boyd, 13 Tenn. App. 432; Duling v. Burnett, 22 Tenn. App. 522, 124 S. W. (2d) 294; Patillo v. Gambill, 22 Tenn. App. 485, 124 S. W. (2d) 272; McBroom v. S. E. Greyhound Lines, Tenn. App., 193 S. W. (2d) 92; Campbell v. Campbell, Tenn. App., 199 S. W. (2d) 931. Likewise, questions of ordinary care and proximate cause. Southeastern Greyhound Lines v. Groves, 175 Tenn. 584, 136 S. W. (2d) 512, 127 A. L. R. 1378; Campbell v. Campbell, Tenn. App., 199 S. W. (2d) 931; Fields v. Gordon, Tenn. App., 203 S. W. (2d) 934.

Insistence is made that the court erred in admitting certain evidence with reference to the location of the yellow lines on the highway; that said lines were re-painted shortly after the accident, and that the evidence was too remote and should not have been permitted to go to the jury. This assignment is also without merit. Five witnesses stated that the location of the lines had not been altered, and that except for re-painting they were the same as on the date of the accident. There was no proof to the contrary.

■ ■ It is further insisted that the court erred in permitting Dearl Bitner, son of Tom Bitner, to testify with reference to the location of skid marks on the highway observed by him the following morning. The record discloses that the exception to this testimony was sustained. Besides the testimony of this witness was cumulative and harmless since others who were there the night before had previously testified regarding the location of the skid marks. Moreover, under Code Section 10654, no verdict or judgment shall be set aside or new trial granted by this court on account of the improper admission or rejection of evidence unless it shall affirmatively appear

that the error complained of affected the results of the trial. Prejudicial error must affirmatively appear and the burden is upon the complaining party to make the error apparent and manifest, which has not been done.

Insistence is also made that the trial court erred in refusing plaintiffs-in-error a new trial based on newly discovered evidence. According to affidavits signed by Bee Normal Vest and his two brothers, Dee Vest and Claude Vest, as well as by Everett Crisp and Jess W. Gentry, one of Bitner's witnesses, Carl Lawing, told them that he had sworn falsely at the trial with reference to the skid marks on the highway and an empty whiskey bottle alleged to have been found in the Vest truck, and that he was induced to do so by Tom Bitner. It appears that the information in one of these affidavits was based upon statements alleged to have been made by Lawing in the presence of Bee Normal Vest, Crisp and Gentry the night following the trial, at about 9:30 p. m., when they went to the Lawing home at Chucky. In a counter-affidavit Lawing denied that he had made the alleged statements, and said "that he had not told anyone that he swore falsely, or that . . . Tom Bitner induced him to do so, and if he should testify again in said case his testimony would be the same as that before given by him."

There was no evidence that Vest, the driver of the truck, had either been drinking or was under the influence of an intoxicant. There was positive proof, however, that Jess W. Gentry was intoxicated and that he had passed out, and that a wet place on the floorboard of the truck smelled strongly of whiskey. With reference to the skid marks, Lawing's testimony was cumulative, several other witnesses having testified to their location on the highway, and the other matters complained of

were collateral and affected only the credibility of Gentry as a witness. Under our decisions, a new trial will not be granted because of newly discovered evidence which is merely cumulative. Noel v. McCrory, 47 Tenn. 623; Tabler v. Connor, 60 Tenn. 195; Mercer v. Ewing, 6 Higgins Tenn. Civ. App. 384. Cumulative evidence is evidence which speaks to facts in relation to which there was evidence on the trial. McGavock v. Brown, 23 Tenn. 251. Moreover, newly discovered evidence merely to contradict a witness is not sufficient to warrant a new trial. Shelton v. Southern Ry. Co., D. C., 255 F. 182; McAlister's Lessee v. Williams, 1 Tenn. 119; Gentry v. State, 184 Tenn. 299, 198 S. W. (2d) 643, 648. In Gentry v. State, supra, our Supreme Court adopted the rule stated in 39 Am. Jur. as follows: "It is well settled that a new trial will not be granted upon the ground of newly discovered evidence where it appears that such new evidence can have no other effect than to discredit the testimony of a witness at the original trial, contradict a witness's statements, or impeach a witness, unless the testimony of the witness who is sought to be impeached was so important to the issue, and the evidence impeaching the witness so strong and convincing, that a different result must necessarily follow. Newly discovered evidence, to be a ground for new trial, must go to the merits of the case, and not merely impeach the character of a former witness. In a criminal prosecution, an application for a new trial will be denied where it appears that the only tendency of the newly discovered evidence is to impeach or discredit the prosecuting witness or other witness for the state, or to contradict dying declarations." Sec. 167, p. 173.

Besides, the granting or refusing of a new trial on grounds of newly discovered evidence of a contra-

dictory and impeaching character was within the sound discretion of the trial court, and under the circumstances we have found no abuse of discretion. Chambers v. Anderson, 6 Cir., 58 F. (2d) 151; Old Dominion Stages v. Cates, 6 Cir., 65 F. (2d) 258; Zirkle v. Stegall, 163 Tenn. 323, 43 S. W. (2d) 192; Darnell v. McNichols, 22 Tenn. App. 287, 122 S. W. (2d) 808.

By their last assignment, plaintiffs-in-error insist that the trial court erred in certain portions of the charge to the jury. We are unable to consider this assignment because the matters complained of were never made a basis for a motion for a new trial. The rule is well established that this court will not consider any assignment of error, the grounds of which have not been specifically set out in the motion for a new trial. Rule 11, subsec. 5, Rules of Court of Appeals; Tenn. Procedure in Law Cases, Section 1592; Curtis v. Kyte, 21 Tenn. App. 115, 106 S. W. (2d) 234; Southern Ry. Co. v. Hooper, 16 Tenn. App. 112, 65 S. W. (2d) 847; Hargraves v. Hamilton Nat. Bank, 27 Tenn. App. 655; 184 S. W. (2d) 397.

Finding no reversible error, the judgment below will be affirmed and plaintiffs-in-error will be taxed with the costs.